■ In the Matter of LARENZO SS. and Others, Children Alleged to be Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; PATRICK SS., Respondent; MARY UU., Appellant. [734 NYS2d 731] —Mugglin, J. Appeal from an order of the Family Court of Broome County (Danaher, Jr., J.H.O.), entered October 13, 1999, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondents' children and/or stepchildren to be neglected.

Respondent Mary UU. (hereinafter respondent) is the mother of three children. She and the children resided with respondent Patrick SS. (hereinafter the father), who is the biological father of the two younger children. Respondent had been the subject of two prior "indicated" State reports, but neither resulted in any Family Court proceeding. In 1998, respondent

was sentenced to serve weekends in the Broome County Jail and, on January 7, 1999, she was sentenced to a four-month period of incarceration. During both periods of time, she arranged for a friend to stay in her home with the father and her children. On March 11, 1999, the father struck the friend in the face and was arrested on a charge of harassment in the second degree as domestic violence since she was by then pregnant with his child. While responding to this complaint, the police found that the home contained large quantities of accumulated garbage, the oldest child was sleeping on a bare, badly soiled mattress, expired, undispensed medication for the children was in the refrigerator, and no baby food was in the house.[1] Before being taken into custody, the father arranged for a third woman to care for the children. Upon his release the following day, however, the father did not retrieve the children and the babysitter called petitioner. Respondent, who was unable to make other arrangements from jail, consented to placement of the children in foster care.

Petitioner commenced this proceeding to find that respondents neglected the three children. Following a fact-finding hearing, Family Court found that, *inter alia*, respondent had neglected all three children by being incarcerated, by placing the children in the care of the father, a person who she knew or should have known could not provide adequate care for the children, and by failing to treat the eldest child's head lice.[2] Thereafter, the parties stipulated to the terms of a dispositional order which placed the children in the custody of petitioner for a 12-month period.[3] This appeal by respondent followed.

A child is deemed to be neglected if the child's "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care" (Family Ct Act § 1012 [f] [i]) by failure to provide food, clothing, shelter, medical care, educational needs and adequate guardianship and supervision necessary to ensure that the child is not harmed or at

---

**1.** Based on the officers' findings, a State report was found to be "indicated" but respondent was found not responsible for the reported maltreatment.

**2.** Findings of neglect were also made against the father, but the father is not appealing said adjudication.

**3.** During the pendency of this appeal, the children have been returned to respondent's custody. Although the dispositional order has therefore expired, the appeal is not moot as "an adjudication of neglect may affect a parent's status in future proceedings" (*Matter of Ronnie XX. [Charlene XX.]*, 273 AD2d 491, 493 n 2).

substantial risk of being harmed (see, Matter of Ember R. [Dana R.], 285 AD2d 757, 758, lv denied 97 NY2d 604; Matter of Aishia O. [Mary Q.], 284 AD2d 581, 582; Matter of Christopher JJ. [Kimberly JJ.], 281 AD2d 720, 721). We have previously held that "[t]he minimum degree of care standard requires an objective evaluation of [the] respondent's actions in light of what a reasonable and prudent parent would have done * * * so as not to pose a risk of impairment to the child or place the child in imminent danger of impairment" (Matter of Christopher JJ. [Kimberly JJ.], supra, at 721 [citation omitted]; see, Matter of Robert YY. [Mary ZZ.], 199 AD2d 690, 692). Findings of child neglect must be supported by a preponderance of the evidence (see, Matter of Nicole V., 71 NY2d 112, 117), and the petitioner in a child neglect proceeding bears the burden of proof (see, e.g., Matter of Ronnie XX. [Charlene XX.], 273 AD2d 491, 493-494; Matter of Nathaniel TT. [Leonard UU.], 265 AD2d 611, 613, lv denied 94 NY2d 757).

Our review of this record, as it pertains to respondent, leads us to conclude that petitioner failed to sustain its burden of proof that she neglected her children and we therefore reverse as to her. In this regard, the record discloses that prior to the March 11, 1999 incident, the children did not appear neglected. Petitioner's caseworker made several unannounced visits at the home in January and February 1999 and found the home to be clean and appropriately furnished, there was appropriate food for the children and no reasons for concern. A February 1999 visit by police, at the request of petitioner, found similar conditions. Nevertheless, petitioner argues that respondent's arrangement for a friend to assist the father in caring for the children is evidence that she was aware of his inability to care for them. We disagree and view this evidence as proof of respondent's attempt to ensure that her children would be cared for while she was incarcerated.

While a finding that children have been exposed to domestic violence in the home can be a basis for a finding of neglect (see, Matter of Andrew MM. [Brett NN.], 279 AD2d 654, 656-657; Matter of Kathleen GG. [Kenneth II.], 254 AD2d 538, 540; Matter of Rita XX. [Gladys XX.], 249 AD2d 850, 851), there is no proof in this record that respondent exposed the children to domestic violence or that she knew or should have known that the father would commit an act of domestic violence against the friend during respondent's incarceration. Moreover, the evidence fails to establish that respondent is guilty of neglect by failing to treat the eldest child for head lice. While the presence of head lice can be an indicator of neglect (see, Matter of

*Noemi B. [Lazar B.]*, 273 AD2d 304, 304; *Matter of Kathleen GG. [Kenneth II.]*, *supra*, at 539-540), respondent did not ignore the problem. Her attempts to rid the child of the problem by the use of different shampoos and by cutting the child's hair were, however, ineffectual. This led to petitioner's claim that the child had a high rate of absenteeism from school, but petitioner offered no evidence with respect to the child's school attendance.

Finally, respondent's incarceration, standing alone, does not form an adequate basis upon which to make a finding of neglect. The record reveals no evidence of neglect prior to respondent's incarceration nor does it reveal that she knew or should have known that the father would neglect the children while she was incarcerated.

Mercure, J. P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the amended petition against respondent Mary UU.; amended petition dismissed against said respondent; and, as so modified, affirmed.