■ In the Matter of CHRISTIAN Q.,and Others, Children Alleged to be Neglected. SARATOGA COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; REBECCA Q., Respondent. [821 NYS2d 282]—

Spain, J. Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered January 10, 2005, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's children to be neglected.

Respondent is the mother of three boys born in 1992, 1993 and 1997. In July 2004, the children came into the care and custody of petitioner as a result of their temporary removal upon respondent's consent (*see* Family Ct Act § 1021). Respondent, a single parent, agreed to placement of the children after she was informed by petitioner that she was no longer eligible for emergency housing assistance. The ineligibility was premised upon respondent's alleged failure to comply with requirements for the continued receipt of public assistance benefits which were necessary to prevent the children from becoming homeless. Petitioner thereafter filed a neglect petition against respondent, alleging that she failed to provide a minimum degree of care for her children by not complying with the employment search and housing search requirements of petitioner's emergency housing assistance program. A fact-finding hearing ensued and, after the close of petitioner's case-in-chief, respondent moved to dismiss the neglect petition. Family Court directed the parties to submit briefs and, after oral argument, granted respondent's motion, finding that petitioner had not met its threshold burden of establishing that respondent's conduct constituted neglect of her children.

Petitioner's sole contention on appeal—supported by the Law Guardian—is that Family Court erred in granting respondent's motion to dismiss. "A child is deemed to be neglected if the child's 'physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally

responsible for his care to exercise a minimum degree of care' by failure to provide food, clothing, shelter, medical care, educational needs and adequate guardianship and supervision necessary to ensure that the child is not harmed or at substantial risk of being harmed" (*Matter of Larenzo SS.*, 289 AD2d 880, 881-882 [2001], quoting Family Ct Act § 1012 [f] [i]; *see* Family Ct Act § 1012 [f] [i] [A]). In applying the "minimum degree of care" standard applicable to all parents regardless of lifestyle or social or economic status, Family Court must determine, upon an objective evaluation of parental behavior, whether respondent acted as a reasonably prudent parent would have acted under the circumstances (*see Matter of Jerrica J.*, 2 AD3d 1161, 1162 [2003]). Where a motion is made by the respondent at the close of the petitioner's case to dismiss a neglect petition, Family Court must determine whether the petitioner presented a prima facie case of neglect (*see Matter of Camara R.*, 263 AD2d 710, 712 [1999]; *Matter of Colleen CC.*, 232 AD2d 787, 789 [1996]), viewing the evidence in a light most favorable to the petitioner and affording it the benefit of every inference which could be reasonably drawn from the proof presented (*see Matter of Evelyn X.*, 290 AD2d 817, 819 [2002], *appeal dismissed* 98 NY2d 666 [2002]; *see also O'Neil v Port Auth. of N.Y. & N.J.*, 111 AD2d 375, 376 [1985]).

During the period between January and July 2004, at her request, respondent and her children were provided public assistance by petitioner, including emergency housing in various motels. An Independent Living Plan (hereinafter ILP) was developed in order to bring her to a point where she would no longer be in need of emergency housing. The ILP—and subsequent ILPs—required respondent, among other things, to seek out job prospects and housing prospects. Petitioner, through its caseworkers, provided respondent with help in her search efforts sometimes with back-up transportation and/or childcare to assist her in complying with the ILPs. Nevertheless, respondent was often found to be not in compliance and, on two occasions, her noncompliance caused them to lose their emergency housing for 30-day periods. The decision to file the neglect petition came in early July 2004 when a suitable and available—though distant—apartment was found in another county, but was rejected by respondent over concerns about, among other things, her inability to pay the security deposit, despite what petitioner characterized as a "workable plan" agreed to by the landlord to cover the security deposit in installments. Because petitioner viewed respondent's rejection of this apartment as being noncompliant with her current ILP, she was informed that she faced a third 30-day sanction and loss of emergency housing as-

sistance. At this point, respondent voluntarily surrendered her children to petitioner for placement in foster care and the neglect petition followed.

Under these circumstances, in which there is evidence, if credited, of instances in which respondent failed to cooperate in or meaningfully achieve what appear to be reasonable ILP goals, petitioner presented a prima facie case of parental behavior leading to a potential risk of harm to the children (*see Matter of Trebor UU.,* 279 AD2d 735, 737 [2001]). Once petitioner met this burden, the onus should have then shifted to respondent to present proof challenging the prima facie evidence of neglect, if she chooses, or to rest and permit a decision on the merits on the strength of petitioner's case (*see Matter of Philip M.,* 82 NY2d 238, 244 [1993]; *Matter of Colleen CC., supra* at 789). This would have provided respondent with an opportunity to present any extenuating circumstances which might explain or refute her continuing lack of success in finding suitable housing. Thereafter, Family Court, of course, retains the duty to rule on the merits of the petition (*see* Family Ct Act § 1051) and enter any authorized disposition it deems appropriate (*see* Family Ct Act § 1052). Accordingly, respondent's motion to dismiss should have been denied and the fact-finding hearing should have been completed.

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the order is reversed, on the law, without costs, respondent's motion denied, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision.